In re METAL BROKERS
INTERNATIONAL,
INC., Debtor.

MET–AL, INC., Plaintiff,

v.

Raymond GABOR, Defendant.

Bankruptcy No. 92–26568–JES.
Adversary No. 97–2306.

United States Bankruptcy Court,
E.D. Wisconsin.

June 17, 1998.

Mark S. Schmitt, Milwaukee, WI, for Plaintiff.

Earl P. Gray, St. Paul, MN, for Defendant.

### DECISION

JAMES E. SHAPIRO, Chief Judge.

### *PRELIMINARY*

Defendant, Raymond Gabor, has moved to dismiss this adversary complaint which was commenced against him by plaintiff, Met–Al, Inc. ("Met–Al"), assignee of the claim of John F. Scaffidi, trustee in bankruptcy for Metal Brokers International, Inc. ("debtor"). Met–Al is one of the debtor's largest unsecured

creditors with a claim of approximately $5.2 million. The adversary proceeding alleges that Gabor received pre-petition payments from the debtor in the aggregate amount of not less than $110,000 which were either fraudulent conveyances under § 548 or preferences under § 547 of the Bankruptcy Code. Gabor contends that Met–Al has no standing to pursue for itself a claim based upon preferential and/or fraudulent transfers to Met–Al, despite the assignment it received from Scaffidi.

## FACTS

On October 20, 1992, an involuntary petition in bankruptcy under chapter 7 was filed against debtor. On November 23, 1992, an order for relief was entered, and Scaffidi was appointed bankruptcy trustee. In 1994, Scaffidi commenced a series of adversary proceedings, including one against Gabor (Adversary Case No. 94–2364). In his adversary proceeding brought against Gabor, Scaffidi alleged that Gabor received payments of at least $110,000, which are voidable as either fraudulent conveyances or preferences. Gabor contested this adversary proceeding. In 1996, Scaffidi agreed to a voluntary dismissal of this adversary proceeding but retained the right to refile on or before June 30, 1997.

On May 13, 1997, Scaffidi filed a notice of his intention to assign, for $15,000, the bankruptcy estate's rights to the three adversary proceedings, including that which was brought against Gabor. The notice stated that the "defendants have retained all defenses except those based on statute of limitations or timeliness." The notice further characterized the assignment as a "quit claim assignment."

The notice also specified that "any creditor or party in interest wishing to oppose the proposed assignment to Met–Al may do so by submitting a written objection" by May 28, 1997. Gabor did not receive this notice, and the deadline passed without any objections being filed.

A proposed order was thereafter submitted by Scaffidi to the court authorizing the assignment of the three adversary proceedings to Met–Al. This order provided in part the following:

The trustee is authorized to assign to Met–Al, Inc. the estate's rights in Adversary Proceeding No. 94–2364 (*Scaffidi v. Gabor* ) ... on the terms and conditions described in the notice.

The order and the quit claim assignment from Scaffidi to Met–Al, Inc. were both signed on June 2, 1997. This adversary proceeding was filed on June 30, 1997.

## ANALYSIS

Gabor asserts that a chapter 7 trustee, and only a chapter 7 trustee, has the standing to pursue fraudulent conveyance and/or preferential avoidance actions, citing as authority *Matter of Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir.1988), and *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1230–31 (7th Cir.1990). Gabor contends that a chapter 7 trustee has no right to assign the trustee's avoidance powers to a third party. He acknowledges that there are limited circumstances where a third party can pursue avoidance actions but that these limited circumstances are not present in this case. Such limited circumstances require a specific court appointment of the third party acting on behalf of all unsecured creditors in a chapter 11 case, as authorized under 11 U.S.C. § 1123(b)(3)(B). Gabor notes that Met–Al was acting not as a representative of unsecured creditors but only for its own behalf and that this is a chapter 7 case. He concludes, under these circumstances, that the assignment to Met–Al was ineffective.

Met–Al responds that it had obtained specific court permission to pursue the avoidance actions by virtue of this court's June 2, 1997 order authorizing the assignment to it. Met–Al places reliance upon *In re Professional Investment Properties of America*, 955 F.2d 623 (9th Cir.1992), cert. denied, 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992), which, like the instant case, was a chapter 7 case. *Professional Investment Properties* found that the trustee sold to a third party the estate's avoidance claim, with the "tacit approval" of the bankruptcy court and that, while the purchaser was acting for itself, it did so with the "apparent blessing of the bankruptcy court and the trustee" and should be permitted to assert the trustee's

powers. Met–Al similarly maintains that the assignment to it is valid and that such assignment benefitted all of the creditors because the $15,000 it paid to Scaffidi will, in turn, eventually be distributed as a dividend.

*North Atlantic Millwork Corp.,* 155 B.R. 271 (Bankr.D.Mass.1993), is pertinent here and reaches a result directly opposite to the holding in *Professional Investment Properties. North Atlantic Millwork* was filed as a chapter 11 case but was eventually converted to a case under chapter 7. While the case was in chapter 11, the court approved a sale of the debtor's assets to North Atlantic Millwork Acquisition Corp. under an asset purchase agreement. The assets purchased included "all potential claims and causes of action under Sections 547, 548, 549 and 550 of the Bankruptcy Code relating to the Seller in the Chapter 11 case." Under the terms of the asset purchase agreement, Fleet National Bank and Fleet Credit Corporation (collectively "Fleet") was authorized to retain the lien which it obtained before bankruptcy on these potential claims and causes of action and was also authorized to commence and prosecute avoidance actions for itself and on behalf of North Atlantic Millwork Acquisition Corp.

Fleet then commenced a series of adversary proceedings for the alleged preferential transfers. Approximately one month after the adversary proceedings were commenced, the case was converted to a case under chapter 7. Marvin Lumber & Cedar Co., the largest of the defendants in the preference suits, brought a motion to dismiss the adversary proceeding against it, claiming that only a debtor in possession or a bankruptcy trustee has standing to prosecute preference actions, and therefore, Fleet lacked standing to pursue the preference action. This is essentially the same argument being made by Gabor. Fleet, like Met–Al here, cited *In re Professional Investment Properties.* Fleet argued that there was a substantial benefit to the estate from this sale, noting that if the debtor's assets had been liquidated instead of being sold, there would have been no distribution to the general unsecured creditors. The court in *North Atlantic Millwork* rejected Fleet's argument and granted the motion

of Marvin Lumber & Cedar Co. to dismiss. It held that, absent the appointment of a third party to commence a preference action pursuant to a plan of reorganization under § 1123(b)(3)(B), no other statutory authority exists to enable Fleet to bring such action. The court concluded, 155 B.R. at 284:

> ... (I)t follows that the Sale order explicitly approved what upon due consideration were inappropriate assignments of the right to bring preference claims first to (the Purchaser) and then to Fleet. Since neither the statutory scheme nor the rationale of the line of cases under section 1123(b)(3)(B) permitting appointed representatives of the estate to bring preference claims pursuant to plans of reorganization applies, the motions to dismiss are meritorious with respect to Fleet's lack of standing to prosecute preference claims. Although this Court's Sale Order expressly authorized Fleet to commence and prosecute preference claims, the Sale Order did not address, let alone purport to bar, the rights of preference defendants to contest Fleet's standing. Moreover, the Sale Order did not contain a guarantee that Fleet's prosecution of preference claims would be successful or that its security interest in the preference recoveries would have value.

The facts in the case at bar are even stronger for the granting of Gabor's motion to dismiss. Unlike the order in *Professional Investment Properties,* the order in the instant case approving the assignment to Met–Al did not expressly authorize Met–Al to commence and prosecute the preference and/or fraudulent conveyance claims. It merely approved the quit claim assignment to Met–Al. Gabor was not given notice of the proposed assignment. He cannot be denied his right to challenge Met–Al's standing. To do so would be to deprive him of his due process rights. Due process guarantees to parties notice and an opportunity to be heard. *Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement and Equipment Corp.,* 54 F.3d 406, (7th Cir.1995). The notice of the assignment explicitly stated that the defendants (including Gabor) shall retain all defenses other than those based upon statute of limitation or timeliness. Such de-

fenses include the right to challenge Met–Al's standing.

Met–Al reads too much into the June 2, 1997 court order, which only approved a quit claim assignment. Met–Al made a business judgment to acquire such assignment in full recognition of the litigation risks involved. The quit claim assignment makes this very clear by virtue of the following language:

This assignment is made without any representations or warranties of any nature whatsoever, and without any recourse to the trustee or the bankruptcy estate. Met–Al, Inc. acknowledges that it has *independently analyzed* the merits, *assignability*, procedural status, and *risks* of the assigned litigation, and is not relying on any representations or assignments by the trustee or his agent with respect thereto. (Underlining added for emphasis.)

### CONCLUSION

This court aligns itself with the holding reached in *North Atlantic Millwork Corp.* The assignment from Scaffidi to Met–Al was ineffective. Met–Al lacks standing to pursue .

any fraudulent conveyance and/or preference action against Gabor.

Perhaps there should be a provision in the Bankruptcy Code declaring that a chapter 7 trustee can assign the trustee's avoidance powers to a third party who can, in turn, assert such avoidance powers for itself. That, however, is a matter for the legislature, not for this court. As the Seventh Circuit recently declared:

It is our task to apply the text, not to improve upon it. (Quoting from U.S. Supreme Court Justice Thomas in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 538, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)).

*In re Platter*, 140 F.3d 676 (7th Cir.1998).

Gabor's motion to dismiss is **GRANTED**.